GEORGE DEPUY, Appellant, v. CHICAGO, ROCK
ISLAND & PACIFIC RAILWAY COMPANY,
Respondent.

**Kansas City Court of Appeals, December 19, 1904.**

1. **MASTER AND SERVANT: Iowa Fellow-Servant Law: Rail-roads: Moving Trains.** Under the Iowa fellow-servant statute if a railroad employee is injured by the negligence of his fellow-servant he is not entitled to recover, unless his injury was in some way connected with the movements of trains.

2. ———: **Fellow-Servants: Alter Ego: Railroads: Negligence.** Where the negligent act is done by one having authority as an *alter ego*, but relates simply to his duties as a colaborer with those under his control, the common master is not liable; and it is held that a defendant railroad was not liable for the stroke of a fellow-servant in fixing a piling cap, although he did it by the directions of the bridge boss.

3. ———: ———: ———: ———: ———. *Held*, that the defendant railroad was liable for injury resulting from a method of lowering a piling cap adopted by its bridge boss, and in adopting such method he was not the fellow-servant of the plaintiff.

4. ———: ———: ———: ———: ———. *Held*, under the facts in the case, it was for the jury to determine whether defendant furnished a reasonably safe working place for the plaintiff.

5. ———: **Assumption of Risk: Dangerous Place: Experienced Workmen.** Though the servant assume the hazard incident to his employment, yet the master is not relieved of the obligation to exercise care for his safety.

6. ———: ———: ———: ———: **Contributory Negligence.** Mere knowledge of danger in the work or the implements used will not defeat the injured servant's act, unless the danger be glaring.

7. ———: ———: **Evidence: Jury Question.** *Held*, plaintiff was entitled to go to the jury on the question of negligence, first, in regard to the method selected by the foreman for lowering the cap; and second, on the safety of the place of work.

Appeal from Daviess Circuit Court.—*Hon. J. W. Alexander*, Judge.

REVERSED AND REMANDED.

*Platt Hubbell, George Hubbell* and *Boyd Dudley* for appellant.

(1) The servant that defendant authorized to perform these duties is a vice-principal—defendant's *alter ego*. O'Hare v. Railroad, 95 Mo. 667; Butts v. Bank, 99 Mo. App. 173; Ruth v. Transit Co., 98 Mo. App. 14; Connolly v. Ptg. Co., 166 Mo. 463; James v. Mut. R. F. L., 148 Mo. 16; Ballard v. Railroad, 51 Mo. App. 457; Grace v. Railroad, 156 Mo. 301; Creighton v. M. W. A. 90 Mo. App. 387. (2) Franklin was plaintiff's vice-principal. Foster v. Railroad, 115 Mo. 179; Tabler v. Railroad, 93 Mo. 87; Fox v. Packing Co., 96 Mo. App. 183; Glover v. Bolt & Nut Co., 153 Mo. 342; Grattis v. Railroad, 153 Mo. 407; Dayharsh v. Railroad, 103 Mo. 575; Steube v. Iron and Foundry Co., 85 Mo. App. 637; Hutson v. Railroad, 50 Mo. App. 305; Bane v. Irwin, 172 Mo. 317; Slaughter v. Railroad, 116 Mo. 277. (3) In Iowa, the authority to hire and discharge is not the test of vice-principalship. Newbury v. L. & M. Co., 100 Iowa 441, 69 N. W. 745; Foley v. Packing Co., 93 N. W. 287, 119 Iowa 246; Fink v. Ice Co., 84 Ia. 321; Baldwin v. Railroad, 75 Ia. 297, 9 Am. St. Rep. 479; Brann v. Railroad, 53 Ia. 595. (4) The fact that Franklin worked part of the time at physical labor, does not relieve the defendant of liability for his acts as vice-principal. Haworth v. Railroad, 94 Mo. App. 224. (5) Franklin negligently ordered Depuy into a dangerous place to work, and, Franklin negligently prescribed a dangerous method of performing the work. Fink v. Ice Co., 84 Ia. 321; Foley v. Packing Co., (No. 2), 93 N. W. 284 (Ia.), 119 Ia. 246; Beattie v. Bridge Works, 109 Fed. 233; Hall v. Water Co., 48 Mo. App. 356; Halliburton v. Railroad, 58 Mo. App. 27; Monahan v. Clay & Coal Co., 58 Mo. App. 68; Fogus v. Railroad, 50 Mo. App. 250; Young v. Shickle, 103 Mo. 328; Lore v. Mfg. Co., 160 Mo. 626; Kane v. The Falk Co., 93 Mo. App. 209; Hester v. Packing Co., 95 Mo.

App. 16. (6) Defendant's negligence in the original construction of the bent proximately contributed to Depuy's injury. Ashby v. Road Co., 99 Mo. App. 186; Lore v. Mfg. Co., 160 Mo. 627; Brash v. St. Louis, 161 Mo. 438; Vogel v. West Plains, 73 Mo. App. 592; Newcomb v. Railroad, 169 Mo. 423.

*M. A. Low* and *Harber & Knight* for respondent.

(1) Where a contract of employment was made in one State under which the work to be done by the employee, and the work which he did in that State, and the accident happened in that State in the course of his employment, the liability of the employer will be determined by the laws of that State in a suit against the employer in another State to recover damages therefor." Fogarty v. Transfer Co., 79 S. W. 664. (2) Under the provisions of the Iowa statute, section 2071 of the supplement to the code of Iowa for the year 1902 as well as under the decisions of the Supreme Court of Iowa and as interpreted by our own courts—it is clear that any work in connection with bridges such as was engaged in by plaintiff in this case, does not come within the provisions of the statute exempting one employee from the negligence of another, but for all work not in the movement of trains—the negligence of a fellow-servant still precludes a recovery. Callahan v. Railroad, 170 Mo. 481; Williams v. Railroad, 79 S. W. 1167; Deppe v. Railroad, 36 Iowa 52; Foley v. Railroad, 64 Ia. 644; Malone v. Railroad, 65 Iowa 417; Reddington v. Railroad, 108 Ia. 96; Akeson v. Railroad, 106 Ia. 54; Conners v. Railroad, 111 Ia. 384; Meatly v. Railroad, 9 Am. & Eng. Railroad Cases (New Series), 1 and note. (3) The "dual capacity doctrine" obtains both in Iowa and Missouri. Fogarty v. Transfer Co., 79 S. W. 664. The case of Haworth v. Railroad, 94 Mo. App. 224, cited by appellant is not the law and should therefore be no longer followed. The following cases fall within the

second class stated to-wit, where the vice-principal acted as a colaborer. Hanna v. Granger, 18 R. I. 507. 28 Atl. 559; DiMarcho v. Foundry, 18 R. I. 516, 27 Atl. 318, 38 Atl. 661; Frawley v. Sheldon, 20 R. I. 258, 38 Atl. 370; Gann v. Railroad, 101 Tenn. 380, 47 S. W. 483, 70 Am. St. Rep. 687; Ross v. Walker, 139 Pa. St. 51, el Atl. 159, 23 Am. St. Rep. 160; Railroad v. Charles, 162 U. S. 364, 16 Sup. Ct. 848, 40 L. Ed. 999; Barnicle v. Conner, 110 Iowa 240, 81 N. W. 452; Crispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521; Reed v. Stockmeyer, 74 Fed. 186, 20 C. C. A. 581; Meeker v. Remington, 65 N. Y. Supp. 1116; Gall v. Beckstein, 173 Ill. 187, 50 N. E. 711; Drainage Co. v. Fitzgerald, 21 Colo. 533, 43 Pac. 210; Railroad v. Torrey, 58 Ark. 217, 24 S. W. 244; Railroad v. May, 108 Ill. 283; Clay v. Railroad, 56 Ill. App. 233; Railroad v. Massig, 50 Ill. App. 666; Railroad v. Handman, 13 Lea 423; Allen v. Goodwin, 92 Tenn. 385, 21 S. W. 760; Soutar v. Electric Co., 68 Minn. 18, 70 N. W. 796; Sayward v. Carlson, 1 Wash. 29, 23 Pac. 830; Klochinski v. Lumber Co., 93 Wis. 419, 67 N. W. 934; Holtz v. Railroad, 69 Minn. 524, 62 N. W. 805; Fertilizer Co. v. Travis, 102 Tenn. 16, 49 S. W. 832; Railroad, v. Schwabbe, 1 Tex. Civ. App. 573, 21 S. W. 706; Quinn v. Lighterage Co., 23 Blatchf. 209, 23 Fed. 363; The Miami, 93 Fed. 218, 35 C. C. A. 281; Drwyer v. Express Co., 82 Wis. 312; 52 N. W. 304; 33 Am. St. Rep. 44. The following cases fall under the first class stated, to-wit, where the vice-principal acted as such and not as a colaborer. Coal Co. v. Wombacher, 134 Ill. 57, 24 N. E. 627; Fanter v. Clark, 15 Ill. App. 470; Brick Co. v. Sobkomeak, 148 Ill. 573, 36 N. E. 572; Railroad v. Dwyer, 162 Ill. 482, 44 N. E. 815; Steel Co. v. Schymanowski, 162 Ill. 447, 44 N. E. 876; Bridge Co. v. Walker, 170 Ill. 550, 48 N. E. 915; Offutt v. Exposition, 175 Ill. 472, 51 N. E. 651; Railroad v. Atwell, 198 Ill. 200, 64 N. E. 1095. In Norton v. Nadebok, 190 Ill. 595, 60 N. E. 843, 54 L. R. A. 842, there was a conflict in the evi-

dence as to whether the operator of a machine was a vice-principal or a fellow-servant with a helper who worked around the machine. (4) The adoption of a plan is one thing, the negligence in carrying it out is another. The negligence alleged is the hammering down of the cap without giving the plaintiff warning or time to get therefrom. Beside, the master in this case furnished competent workmen and suitable material for scaffolding and the work in hand, and left to the workmen the manner of its construction. In such case they are all fellow-servants, and the master is not liable to one of them for the negligence, if any, of his fellow workmen, in the matter of construction. Bridge Co. v. Castelberry, 131 Fed. 181; 12 Am. and Eng. Ency. Law (2 Ed.), 956; Bowen v. Railroad, 95 Mo. 277; Livengood v. Lead & Zinc Co., 77 S. W. 1077. (5) Plaintiff either knew or had the opportunity to know every fact that defendant knew or had opportunity to know. In fact plaintiff knew every condition existing about this work that any person could know. Where the servant knows and appreciates the danger or has equal means of knowledge with the master, there can be no recovery. Fugler v. Bothe, 117 Mo. 493; Thomas v. Railroad, 109 Mo. 187; Flyn v. Bridge Co., 42 Mo. App. 529; Williams v. Railroad, 119 Mo. 316; Watson v. Coal Co., 52 Mo. App. 366; Breeden v. Mining Co., 76 S. W. 731; Livingood v. Lead & Zinc Co., 77 S. W. 1077; Grattis v. Railroad, 153 Mo. 380; Minnier v. Railroad, 167 Mo. 99; Harrington v. Railroad, 78 S. W. 662; Bradley v. Railroad, 138 Mo. 302; Berning v. Medart, 56 Mo. App. 433; Beckman v. Anheuser-Busch Co., 98 Mo. App. 555; Sinburg v. Falk Co., 98 Mo. App. 546; Holmes v. Brandenbaugh, 172 Mo. 64; Jackson v. Railroad, 104 Mo. 448; Blanton v. Dold, 109 Mo. 64; Epperson v. Cable Co., 155 Mo. 378; Roberts v. Tel. Co., 166 Mo. 379; Cordage Co. v. Miller, 126 Fed. 513; Kohn v. McNulta, 147 U. S. 241, 13 Sup. Ct. 298, 37 L. Ed. 150; Railroad v. Railroad, 122 U. S.

194, 7 Sup. Ct. 1166; 30 L. Ed. 1114; Gibson v. Railroad, 63 N. Y. 449, 20 Am. Rep. 552; Sweeney v. Envelope Co., 101 N. Y. 520, 5 N. E. 358, 54 Am. Rep. 722; Buckley v. Mfg. Co., 113 N. Y. 540, 21 N. E. 717; Cole v. Sav. & Loan Society (C. C. A.), 124 Fed. 122; Brady v. Railroad, 114 Fed. 105, 52 C. C. A. 53, 57 L. R. A. 712;Railroad v. Belliwith, 83 Fed. 441, 28 C. C. A. 362; Association v. Wilson, 100 Fed. 370, 40 C. C. A. 413; Commissioners v. Clark, 94 U. S. 284, 24 L. Ed. 59; Railroad v. Bank, 123 U. S. 733, 8 Sup. Ct. 266, 31 L. Ed. 287; Railroad v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; Mfg. Co. v. Inspection & Ins. Co., 60 Fed. 354, 9 C. C. A. 4; Gowen v. Harley, 56 Fed. 973, 6 C. C. A. 190; Motey v. Granite Co., 74 Fed. 157, 20 C. C. A. 368. The "scintilla" doctrine does not obtain in Missouri. Powell v. Railroad, 76 Mo. 80 and authorities there cited. (6) Where the servant has knowledge of the condition of a given piece of work or of a structure, the law will most usually infer his comprehension of the risks arising therefrom. Labatt on Master and Servant, sec. 279b, notes 1 and 3; Watson v. Coal Co., 52 Mo. App. 366; Convey v. Railroad, 86 Mo. 635; Bering v. Medart, 56 Mo. App. 443; Apple v. Railroad, 111 N. Y. 553, 19 N. E. 93; Anderson v. Clark, 155 Mass. 368, 29 N. E. 589; Scharenbroich v. St. Cloud Co., 59 Minn. 116, 60 N. W. 1093; Ragon v. Railroad, 97 Mich. 265, 56 N. W. 612; Electric Co. v. Laughlin, 45 Neb. 390, 63 N. W. 941; Yates v. Iron Co., 68 Md. 370, 16 Atl. 280; Meaney v. Oil Co., 47 Atl. (N. J. L.), 803; Ford v. Railroad, 110 Mass. 243, 14 Am. Rep. 598; Railroad v. Hughs, 119 Pa. 301, 13 Atl. 286; Anderson v. Lumber Co., 47 Minn. 128, 49 N. W. 664; Dorsey v. Phillips Co., 42 Wis. 593; Pierce v. Clavin, 27 C. C. A. 227, 53 U. S. App. 492, 82 Fed. 550; Thompson v. Railroad, 51 Neb. 527, 71 N. W. 61; Alford v. Metcalf Bros. & Co., 74 Mich. 369, 42 N. W. 52; Engine Works v. Randall, 100 Ind. 293, 50 Am. Rep. 798; Berger v. Railroad, 39 Minn. 78, 38 N.

W. 814; Railroad v. Seley, 152 U. S. 145, 14 Sup. Ct. 530, 38 L. Ed. 391; Appel. v. Railroad, 111 N. Y. 550, 19 N. E. 93; Gillin v. Railroad, 93 Me. 86, 44 Atl. 361; Wood v. Locke, 147 Mass. 604, 18 N. E. 578; Mayes, Admr., v. Railroad, 63 Iowa 563, 14 N. W. 340, 19 N. W. 680; Myers v. Railroad, 95 Fed. 407, 37 C. C. A. 138; Brossman v. Railroad, 113 Pa. 496, 6 Atl. 226, 57 Am. Rep. 479; Smith v. Railroad, 42 Minn. 87, 43 N. W. 968; Devitt v. Railroad, 50 Mo. 305; Packing Co. v. Marcan, 45 C. C. A. 517, 106 Fed. 647; Kleinest v. Kunhardt, 160 Mass. 230, 35 N. E. 458; Hoard v. Mfg. Co., 177 Mass. 71, 58 N. E. 180; Mfg. Co. v. Erickson, 5 C. C. A. 343, 55 Fed. 945; Gowen v. Harley, 6 C. C. A. 197, 56 Fed. 980; Motey v. Marble & Granite Co., 74 Fed. 158, 29 C. C. A. 369; King v. Morgan, 48 C. C. A. 511, 109 Fed. 450; Smith v. Railroad, 42 Minn. 87, 43 N. W. 968; Fisk v. Railroad, 158 Mass. 238, 33 N. E. 510; Glover v. Bolt Co., 153 Mo. 327, 55 S. W. 88; Gibbons v. Navigation Co., 175 Mass. 212, 55 N. E. 987; Carpet Co. v. O'Keefe, 79 Fed. 900, 25 C. C. A. 220; Epperson v. Cable Co., 155 Mo. 378, 50 S. W. 1050; Roberts v. Tel. Co., 166 Mo. 379, 66 S. W. 155; Steinhauser v. Spraul, 127 Mo. 541, 28 S. W. 620, 30 S. W. 102, 27 L. R. A. 441; Campbell v. Dearborn, 175 Mass. 185, 55 N. E. 1042; Barry v. Biscuit Co., 177 Mass. 452, 59 N. E. 75; Dredging Co. v. Walls, 84 Fed. 428, 28 C. C. A. 441; Hunt v. Kile, 98 Fed. 53, 38 C. C. A. 645; Ford v. Pulp Co., 172 Mass. 546, 52 N. E. 1065, 48 L. R. A. 96; Sullivan v. Electrical Co., 178 Mass. 39, 59 N. E. 645; Demers v. Marshall, 179 Mass. 12, 59 N. E. 454; Whalen v. Whitcomb, 178 Mass. 34, 59 N. E. 666; Hall v. Railroad, 178 Mass. 98, 59 N. E. 668.    (7) "A preliminary question for the judge always arises at the close of the evidence before a case can be submitted to the jury.  That question is, not whether or not there is any evidence, but whether or not there is any substantial evidence upon which a jury can properly render a verdict in favor of the party who

produces it. Railroad v. Barry, 43 L. R. A. 349, 28 C. C. A. 644, 56 U. S. App. 37, 84 Fed. 944; Railroad v. Shean (Tex.), 18 S. W. 151; Powers v. Railroad, 98 N. Y. 274; Crawford v. Railroad, 127 Mich. 312; Marean v. Railroad, 167 Pa. 220, 31 Atl. 562; Nattress v. Railroad, 150 Pa. 527, 24 Atl. 753; Wojcieshowski v. Sugar Ref. Co., 177 Pa. 57, 35 Atl. 596; Railroad v. Rogers, 6 C. C. A. 403, 13 U. S. App. 547, 57 Fed. 378; Railroad v. Lemon, 83 Tex. 143; Railroad v. Drake, 53 Kan. —; Railroad v. Schweder, 47 Kan. 315; Railroad v. Barber, 5 Ohio St. 541, 67 Am. Dec. 312.

BROADDUS, J.—Plaintiff seeks to recover damages the result of an injury he received on the 9th day of September, 1902, in the State of Iowa, occasioned, as alleged, by the negligence of the defendant. It appears that plaintiff and two other persons, named Lambert and Franklin, the latter having control and supervision of workmen on bridges in the absence of the general foreman, were engaged in working on one of defendant's bridges when plaintiff was injured. On and prior to said date, defendant was engaged in the construction of a certain bridge over a deep cut on the line of its railroad. On each side of its track, what is called among bridgemen, "bents," had been constructed and caps placed thereon. Each of these bents consisted of four wooden piles about thirty-five feet long and three feet in circumference and were driven into the ground about four feet. Piling of this kind, owing to their great length, when driven into the ground are often out of line. On such occasions they are forced into line by the use of jacks and then secured by means of braces. In this instance they were forced into line and secured by what are called caps. These caps were of wood twelve by fourteen inches in diameter and sixteen feet long. Through each cap and into the top end of each pile an iron bolt, called a drift pin, was driven, the bolt penetrating the pile for a distance

of four or five inches.   Franklin discovered that one of
said bents was about two and one-half inches too high
and undertook to lower the same by sawing into the
drift bolts, then to remove the part sawed off by the
use of chisels, and then to drive down the caps to the
end of the piles again.   In order to accomplish the work
it became necessary to erect a scaffold for the men to
stand upon.   This was done under Franklin's direc-
tions by attaching pieces of timber to the piles some dis-
tance below the caps, upon which timber were laid
boards about two feet from and on both sides of the
piles.   This scaffold was about twenty-nine feet above
the ground.   Plaintiff and Lambert, under the direc-
tions of Franklin, did the work of sawing and chiseling,
after which Franklin and Lambert got upon the cap
and with a heavy iron bar proceeded, by striking it,
to force it down onto the ends of the piles, Franklin
standing on one end of the cap and Lambert on the
other.   Franklin drove the cap at his end and then
handed the bar to Lambert, who in turn struck the cap,
at which one of the drift pins came out on his side,
which had the effect of releasing its hold, and the cap
sprang back a sufficient distance to strike plaintiff who
was still on the platform, and which caused him to fall
to the ground, whereby he was seriously hurt.   Other
portions of the testimony will be alluded to in the
course of the opinion.

The alleged grounds of negligence upon which
plaintiff relies are that, owing to the tendency of said
piling to spring out of line, they were not securely and
firmly fastened after they were aligned; that the cap
was not securely attached to said piles; and that the
drift bolts used were crooked, too short, and insufficient
to hold the cap in place; and that the bent was not
provided with "sway braces."  And further that, after
plaintiff had finished sawing off the tops of said piles
and while he was standing on said platform, and just
as he was starting to get off, defendant's foreman, and

another servant acting under his orders, carelessly and negligently struck the cap of said bent a violent blow with some heavy instrument or tool without any notice or warning to the plaintiff of the hazard to which he would thereby be subjected and without giving him time to get off said·scaffold, and that the said striking of said cap made his position extra hazardous, which was well known to defendant.

Defendant in its answer admits it is a corporation and engaged in the business of a common carrier of freight and passengers. And alleges that if plaintiff was injured at the time and place mentioned it was the result of his own negligence and that of his fellow-servants, ''not in any way connected with the use and operation of defendant's railway company; and that under the laws of Iowa defendant was not liable for any of the careless and negligent acts of plaintiff's fellow-servants and colaborers whilst so engaged in said work not in any way connected with the use and operation of its railway; and that the plaintiff assumed the risk usually incident to the work.''

At the close of plaintiff's evidence, under the directions of the court the jury returned a verdict for defendant. Judgment was accordingly rendered and plaintiff appealed. The facts being undisputed, the court treated the case as one of law and held that plaintiff was not entitled to recover. Many questions are raised in the brief and argument of counsel, and more than one hundred authorities cited alone on defendant's side.

Under the answer it is contended that the laws of the State of Iowa govern. In Callahan v. Bridge Co., 170 Mo. 473, the court held that under the statutes of Iowa in order to render the master· liable for negligence of a fellow-servant, the injury must be received ''while moving a train;'' and that, ''the test is, was he injured in consequence of the negligence of another employee or *engineer* in moving a train?'' And

that, "the injuries must have been inflicted by the movement of a train." This court discussed, in an opinion by Judge ELLISON, the effect of said decision by the Supreme Court. [Williams v. Railroad, 79 S. W. 1167.] Therefore, it follows that if plaintiff was injured by the negligent act of Franklin while he was acting in the capacity of a fellow-servant plaintiff was not entitled to recover, as his injury was not in any way connected with the movements of defendant's trains.

Under the rulings of our courts, one having authority may act in a dual capacity. That is to say, while he directs and controls others, he is the master; but while he is engaged as a laborer with other laborers, he is a fellow-servant. The latest decision on this question is found in Fogarty v. Transfer Co., 79 S. W. 664. The question arose under a construction of the laws of Illinois where the injury occurred. And the holding is that the laws of the two States were the same, and that such was also the law of Iowa, citing Barnicle v. Conner, 110 Iowa. l. c. 240. The court quoted with approval from an Illinois case the following: "If the negligence complained of consists of some act done by one having authority which relates to his duties as a colaborer with those under his control, and which might just as readily have happened with one of them having no such authority, the common master will not be liable." And for illustration, instanced a railroad section boss who, while laboring with his men, should negligently injure one of them. While, "on the other hand, the mere fact that the servant exercising such authority sometimes, or generally, labors with others as a common hand, will not of itself exonerate the master from liability for the former's negligence in the exercise of his authority over others." And further, "when the negligent act complained of arises out of, and is the direct result of the authority conferred upon him by the master over his colaborers, the master will be

liable.'' We do not believe that defendant is liable for the alleged negligent manner in which Lambert, under the direction of Franklin, struck the cap, which blow caused it to become detached from the end of the piling. There does not appear from the evidence that there was anything unusual in the stroke. It is true it was a violent one, but such was necessary to accomplish the desired purpose.

But we are of the opinion that the evidence tended to show that the method adopted by Franklin was unsafe. It will be remembered that the cap in question served to hold the piles in line, and that this cap was secured by iron spikes driven through the cap into the ends of the piles some four or five inches. After two and one-half inches had been removed, the tensile, or power, of the spike to hold was reduced at least one-half. Common experience teaches us that under such circumstances an attempt to force spikes into the end of the piles while the strain was upon them to hold them was liable to result in a mishap. And it seems to us that the evidence tends to show that such was the cause of the trouble. The act of Franklin in adopting the method he did to lower the cap on the piles was not the act of a fellow-servant but that of one in authority. Plaintiff introduced two witnesses experienced in bridge building whose testimony was to the effect that, ''sway'' or side braces attached to the piling would have been more safe than the method adopted. Had such braces been used, the accident, in all likelihood, would not have happened, for it is apparent that the braces would have held the piles in line and all strain would thus have been removed from the cap and it could have been lowered with safety. One of the witnesses stated that such was the proper way in which the work should have been performed. With such evidence, it was a question of fact for the jury to determine, under proper instruction, not whether defendant should have adopted the safest

method for the undertaking, but whether in fact it adopted the one reasonably safe. We can conceive of but two ways which the defendant should have adopted in order to have readily and economically done the work, viz; the one it did adopt, and the other by securing the piling by independent braces. And if the former was not reasonably safe it was its duty to adopt the safest, as it was the only other course to be pursued.

It was a question also for the jury to determine whether the place where plaintiff was working under the circumstances was reasonably safe. It is well settled law that the master is required as a general rule to furnish his servant with a reasonably safe place in which to work. [Nicholds v. Glass Co., 126 Mo. 55; Porter v. Railroad, 71 Mo. 71; Bowen v. Railroad, 95 Mo. 276; and Foley v. Packing Co., 119 Iowa 246.]

But defendant contends that as plaintiff's employment was shown to have been dangerous, he assumed the risks. If the danger that plaintiff encountered was such as was ordinarily connected with his work, he can not recover; for by his contract of employment he assumed such risks. This is well-settled law. [Fugler v. Bothe, 117 Mo. 475; Thomas v. Railroad, 109 Mo. 187. But his assumption of the usual and ordinary risks attendant upon his employment did not relieve the defendant of the obligation to exercise reasonable care for his safety.

It is claimed that the plaintiff, being an experienced carpenter and having performed similar work, was aware of the danger he was incurring, which precluded his right to recover. The mere fact that plaintiff was aware of the fact that the piling was not securely aligned would not charge him with the assumption of the risk nor of contributory negligence. The question is, did he know, or ought he have known, in the exercise of ordinary care, the risks and not merely the defects that existed? [Doyle v. Trust Co., 140 Mo. 1.]

And, "mere knowledge of danger in working with a defective instrumentality will not defeat the servant's action unless the danger be so glaring as to threaten immediate danger." [Devore v. Railroad, 86 Mo. App. 429; Flynn v. Railroad, 78 Mo. 196.] Notwithstanding the plaintiff was engaged in dangerous work, yet the master must exercise reasonable care to secure his safety while so engaged. And such is the holding of all authorities. [Bradley v. Railroad, 138 Mo. 293; Reed v. Railroad, 94 Mo. App. 371.]

Whether or not it was the duty of Franklin to notify plaintiff that he would be in danger on the scaffold while he—Franklin—and Lambert were lowering the cap to the piling, is immaterial. Defendant's liability would depend upon whether the scaffold was a reasonably safe place. If it was, Franklin was not required to give such notice. If it was not, defendant was liable in the first instance; and Franklin's failure to give warning of the danger would not enhance its liability. By so doing the injury perhaps would have been averted, but as there was no pretense that it was so given the matter is unimportant. We believe plaintiff was entitled to go to the jury on two questions, viz.:

First, was the defendant guilty of negligence which resulted in plaintiff's injury by reason of the method selected by its foreman in lowering said cap?

Second, was defendant chargeable with negligence for failure to provide plaintiff a safe place in which to do his work?

Both these were questions of law and fact which plaintiff had a right to submit to the jury. For the reason given the cause is reversed and remanded. All concur.