JOHN A. STEPHENS, Respondent, v. DEATHER-AGE LUMBER COMPANY, Appellant.

Kansas City Court of Appeals, March 27, 1905.

1. **MASTER AND SERVANT**: Fellow-Servant: Evidence. Evidence relating to the duty of a fellow-servant in unloading lumber from a car to a wagon is reviewed and found to show that the injury occurred by the act of a fellow-servant, and not of the vice-principal.

2. ———: ———: Vice-Principal: Dual Capacity. It is the character of the negligent act itself which determines the relation of the actor to the injured servant; if the act be in the exercise of delegated authority the master is liable, if it arises from mere colabor it remains the act of the servant.

3. ———: ———: ———: ———: Jury. Whether servants of the same master are fellow-servants is generally a question of fact for the jury; but if the facts are admitted and all reasonable men will agree in the legitimate conclusions to be drawn therefrom, it is a question of law.

Appeal from Jackson Circuit Court.—*Hon. Andrew F. Evans,* Judge.

REVERSED.

*Botsford, Deatherage & Young* for appellant.

(1)   Neither the defendant nor Floyd were in any way negligent. (2)   The plaintiff was himself negligent, and his negligence caused or contributed to the injury which he received. Moore v. Railroad, 146 Mo.

572; Palmer v. Tel. Co., 91 Mo. App. 106; Hurst v. Railroad, 163 Mo. 322. (3) Plaintiff's counsel in his argument assumes that there must have been a foreman in connection with the work in question. There is nothing in the case to show that there was any necessity for a foreman. (4) Floyd was not a foreman or vice-principal. (5) The power to employ, especially under such circumstances, is not and does not constitute the persons possessing that power, a vice-principal. Glover v. Nut Co., 153 Mo. 342; Hamilton v. Mfg. Co., 4 Mo. App. 565; Mining Co. v. McNally, 15 Ill. App. 188; Tuhe Works Co. v. Bedell, 96 Pa. St. 175. (6) It is well settled that employees may act in a dual capacity. Even if Floyd could be regarded, for some purposes, as performing the personal duties of his master, the work that he was doing on the car in assisting in the unloading of the timbers, was as a fellow-servant. Roland v. Railroad, 20 Mo. App. 468; Marshall v. Shricker, 63 Mo. 308; McGowan v. Railroad, 61 Mo. 528; Lee v. Iron Works, 62 Mo. 565; Moore v. Railroad, 85 Mo. 597; Hoke v. Railroad, 88 Mo. 370; Schaub v. Railroad, 106 Mo. 92; Curd v. Eddy, 129 Mo. 520; Hank v. Lumber Co., 166 Mo. 121; Smith v. Railroad, 151 Mo. 409. (7) A common servant may be entrusted with duties personal to the master. Neglect of the servant in such a case makes the master liable. A servant of superior rank may, as in the case of Floyd, who was a travelling solicitor or salesman, be called upon, as he was, to temporarily fill the place of an ordinary workman. In the latter case, if the servant is negligent, the master is not liable. Baily on Liability of Master to Servant, 244; Crispin v. Babbitt, 81 N. Y. 520; Slater v. Jewett, 85 N. Y. 74; Doty v. Driving Co., 76 Me. 145; Railroad v. Smith, 8 C. C. A. 663, 668; Dwyer v. Express Co., 82 Wis. 307; 12 Am. and Eng. Ency. Law (2 Ed.), 950. (8) The decisions of the courts in other States agree with the Supreme and appellate courts in this State in holding

that in cases like this the master is not liable. Railroad
v. Smith, 59 Ala. 245; Tyson v. Railroad, 61 Ala. 554;
McDonald v. Mfg. Co., 68 Ga. 844; Hanby v. Paper Co.,
110 Ga. 1; Gunn v. Willingham, 111 Ga. 430; Railroad
v. Baugh, 149 U. S. 368; Railroad v. Regan, 160 U. S.
259; Railroad v. Peterson, 162 U. S. 346; Mining Co.
v. Wheelan, 168 U. S. 86; Cooper v. Railroad, 103 Ind.
305; 12 Am. and Eng. Ency. of Law (2 Ed.), 949-958;
McCasker v. Railroad, 84 N. Y. 81; Brick v. Railroad,
98 N. Y. 215; Hissey v. Coger, 112 N. Y. 616; Copasso
v. Woolfolk, 163 N. Y. 472; Allen v. Goodwin, 92 Tenn.
356; Stevens v. Doe, 73 Cal. 27; Donovan v. Ferris, 128
Cal. 48; Rehm v. Railroad, 164 Pa. St. 91; Ricks v.
Flinn, 196 Pa. St. 268; Railroad v. May, 108 Ill. 300;
Linvall v. Woods, 41 Minn. 212; Hoth v. Peters, 53 Wis.
412; Johnson v. Water Co., 77 Wis. 51; Dwyer v. Ex-
press Co., 82 Wis. 307; Klochinski v. Lumber Co., 93
Wis. 424.

*Porterfield, Sawyer* and *Conrad* for respondent.

(1) If there might be said to be in the record any
evidence of contributory negligence on the part of
plaintiff, which we deny, it was of that character which
is peculiarly within the province of the jury to deter-
mine. Two juries have found, by their verdicts for the
plaintiff, that he was not guilty of contributory negli-
gence, and, that the negligence of defendant's fore-
man, Floyd, caused plaintiff's injuries. Petty v.
Railroad, 88 Mo. 306; Cook v. Railroad, 19 Mo.
App. 329. (2) Defendant's next contention that
Mr. Floyd was a fellow-servant with the plaintiff,
the teamster, Mr. Halter, and Mr. Mahoney is
equally untenable. The evidence on both sides estab-
lished the foremanship of Floyd so clearly, so undis-
putably that there is no ground for debate. Add to
this the evidence that he in fact supervised the work-
men, and the inference that he was authorized to act

as foreman by the general manager of the defendant cannot be escaped. Stephens v. Lumber Co., 98 Mo. App. 370; Donnell v. Mining Co., 103 Mo. App. 349; Strode v. Conkey, 105 Mo. App. 12, 78 S. W. 678; Gormley v. Iron Works, 61 Mo. 494; Moore v. Railroad, 85 Mo. 595; Hutson v. Railroad, 50 Mo. App. 303; Dayharsh v. Railroad, 103 Mo. 576; Schroeder v. Railroad, 108 Mo. 329; Miller v. Railroad, 109 Mo. 356; Card v. Eddy, 129 Mo. 510; Russ v. Railroad, 112 Mo. 52; Steube v. Foundry Co., 85 Mo. App. 646; Bane v. Irwin, 172 Mo. 317; Richardson v. Mesker, 171 Mo. 667. (3) Mr. Funk and all the other officers of the defendant remained away from this work and entrusted its doing and its management in all its details to Mr. Floyd, and its liability is the same as if what Mr. Floyd did had been done by the highest officer of the defendant company. Donnell v. Mg. Co., 103 Mo. App. 349; Strode v. Conkey, 105 Mo. App. 12, 78 S. W. 678; Brothers v. Carter, 52 Mo. 376; Hutson v. Railroad, 50 Mo. App. 305; Stuebe v. Found. Co., 85 Mo. App. 647; Dayharsh v. Railroad, 103 Mo. 576; Miller v. Railroad, 109 Mo. 356; Card v. Eddy, 129 Mo. 510; Russ v. Railroad, 112 Mo. 52; Bane v. Irwin, 172 Mo. 317. (4) The fact that Mr. Floyd worked more or less with the men under him did not make him a fellow-servant of the plaintiff and does not relieve the defendant of liability. This exact point is decided in the following cases: Gormley v. Iron Works Co., 61 Mo. 495; Dayharsh v. Railroad, 103 Mo. 577; Russ v. Railroad, 112 Mo. 53; Hutson v. Railroad, 50 Mo. App. 303; Haworth v. Railroad, 94 Mo. App. 224; Bane v. Irwin, 172 Mo. 317; Garland v. Railroad, 85 Mo. App. 582; Donnell v. Mining Co., 103 Mo. App. 349; Strode v. Conkey, 105 Mo. App. 12, 78 S. W. 678.

JOHNSON, J.—This cause was here before upon plaintiff's appeal from an order sustaining a motion for new trial. We affirmed the action of the learned

trial judge—98 Mo. App. 365. Upon a retrial plaintiff recovered judgment in the sum of twelve hundred dollars and defendant is now the appealing party.

But one question will be considered in this opinion as its solution is decisive of the rights of the parties. We have reached the conclusion that under the facts disclosed by plaintiff's evidence, considered either alone or in connection with those brought out by defendant, a recovery cannot be permitted. The injury sustained, if chargeable at all to negligence, was the direct result of the act of a fellow-servant of plaintiff, and not to any act for which defendant as master is liable.

The pertinent facts are as follows: Defendant, a lumber dealer, at and prior to the time of injury, April 16, 1901, was hauling heavy timbers from cars on track in a railroad yard in Kansas City for use in a building under construction. The car being unloaded when plaintiff was hurt was an open coal car provided with sides and ends forming an enclosure some three feet in height. Defendant was using its own team and wagon which were in charge of one of its regular teamsters. The wagon was standing alongside the car. Its floor was about on a level with that of the latter but in order to remove the timbers from car to wagon it was necessary to raise them over the side of the car. The timbers were heavy, being some sixteen feet long and eight inches by fourteen in their other dimensions. Two wooden skids about eight feet long were placed in such a manner as to make an inclined plane from the wagon bed to the top of the car side down upon which the timbers were moved. Four men were engaged in this work, two upon each vehicle. Those in the car raised the timbers to the top of the plane, placed them in proper position thereon and started them down. The men on the wagon attended to adjusting the skids as needed from time to time and placing the timbers in position on the wagon. The men were not stationed but worked inter-

changeably in the several positions as occasion required. When the accident occurred plaintiff was working on one end of the wagon platform; on the other end was the teamster. Floyd and Monahan were on the car, the former working opposite to the teamster, the latter opposite plaintiff. Floyd and Monahan raised a piece of timber to the top of the plane preparatory to sending it down; the teamster and plaintiff adjusted their respective skids; Floyd gave the warning, "look out!" the teamster was then out of the way and Floyd released his end of the beam; Monahan held his end a brief time longer which caused the Floyd end to reach the wagon a few feet ahead of the other, but the latter end arrived there in time to strike plaintiff who had failed to escape and to inflict a serious injury to his left leg.

Plaintiff's cause of action is based entirely upon the alleged negligence of Floyd in prematurely releasing his end of the beam without allowing sufficient time for plaintiff to get out of the way. Defendant, the master for whom the work was being done, is sought to be held liable under the contention that Floyd was acting in the capacity of foreman and, therefore, was as to plaintiff the master's vice-principal. The facts showing the existence of such relation were a bitterly contested issue. It appears that Floyd was a travelling salesman for defendant and had been temporarily pressed into service to aid in the work of unloading cars, which had been progressing for several days, because defendant was short-handed. On the morning of the day the accident occurred the teamster and Floyd were the only employees who reported for duty. They went to the scene of the work and, being unable to proceed, the teamster stayed with the horses and Floyd went to a telephone, called up defendant's office and was instructed to "pick up" two men to help them. Pursuant to this direction, he hired plaintiff and Monahan, and afterwards "gave them their time," which

means an order upon defendant for their wages. Much stress is laid upon the giving of orders by Floyd from time to time during the progress of the work of unloading, but it is apparent no orders called for as an exercise of the master's authority were given, for the very obvious reason that no such orders were necessary. The work was of a very simple character requiring the exercise of but little skill if any. The directions and suggestions made by Floyd and the teamster, referred to in plaintiff's evidence, were such as fellow workmen naturally would make to each other in work performed by co-operating efforts. When men join in the lifting of a heavy load they call back and forth their suggestions to insure unanimity of action, and in sending a load down an incline to other workmen similar means ordinarily are used to insure such concert. Because one of the workmen so employed happens to have had some slight authority delegated to him is no reason why the directions or suggestions emanating from him as a mere workman should be raised to the dignity of a master's orders. It is evident from the situation, as well as from the testimony offered by plaintiff, that Floyd's primary duties were those of a mere hand. The delegation to him of the power to employ for temporary aid two other hands was merely incidental. The teamster was an experienced hand at this kind of work and no necessity existed for sending a salesman down to "boss" such a simple operation. It was common labor, not overseeing, of which defendant stood in need.

But if it can be said that Floyd was there as defendant's vice-principal, plaintiff failed to make a case under the rule but recently reaffirmed by the Supreme Court in Fogarty v. Transfer Co., 180 Mo. 490, and by this court in Depuy v. R. R., 110 Mo. App. 110, 84 S. W. 103. The proximate cause of plaintiff's injury was not an order negligently given by the foreman but, as asserted by plaintiff, the negligence of Floyd in handling the tim-

bers—purely an act of a mere workman. The rule approved in the Fogarty case is stated in this language: "If the negligence complained of consists of some act done or omitted by one having such authority which relates to his duties as a colaborer with those under his control, and which might just as readily have happened with one of them having no such authority, the common master will not be liable. . . . But when the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his colaborers the master will be liable." It is the character of the act itself that determines the relation of the actor to the injured servant. If it is one performed in the exercise of delegated authority it becomes the act of the master; and, on the other hand, if it arises from mere colabor it remains the act of a servant.

Applying this test, Floyd's act in releasing the timber cannot by any stretch of the imagination be tortured into the manifestation of authority. It was entirely disassociated from any prerogative of the master. It might have happened with any fellow workman without the intervention of authority. Had Monahan dropped his end first it will not be contended that the fellow-servant rule would not apply, but plaintiff says that the act of Floyd, who was doing exactly the same work as Monahan, must be judged by an entirely different rule because of his rank. The position is untenable. [Harper v. Railroad, 47 Mo. 567; Gormly v. Iron Works, 61 Mo. 492; Whalen v. Church, 62 Mo. 326; Moore v. Railroad, 85 Mo. 588; Bane v. Irwin, 172 Mo. 306; Lee v. Detroit Works, 62 Mo. 565; Card v. Eddy, 129 Mo. 510; Hawk v. Lumber Co., 166 Mo. 121.]

Further, it is contended that the question of the relation of Floyd to plaintiff is one for the jury. In Norton v. Nadebok, 190 Ill. 595, appears this statement of the principle applicable which was approved in the Fogarty case: "As a general rule the question

whether servants of the same master are fellow-servants is a question of fact to be determined by the jury from all the facts of each case. . . . If, however, the facts are conceded or there is no dispute with reference thereto, and all reasonable men will agree, from the evidence and the legitimate conclusions to be drawn therefrom, that the relation of fellow-servants exists, then the question becomes one of law, and not of fact.''

In the Fogarty case the submission of this issue to the jury was sustained because under the plaintiff's evidence it was clear the negligent act was committed in the exercise of authority. In this case, giving to plaintiff's evidence every consideration, it appears from the facts therein disclosed, and the reasonable inference to be drawn therefrom, that there is an entire failure of proof with respect to the issue of *respondeat superior*.

The judgment is reversed. All concur.